**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
**PHILADELPHIA DIVISION**

| | |
|---|---|
| OYAKIMIGBIA OKOKURO, individually and on behalf of all others similarly situated,<br><br>v.<br><br>APEX HUMAN SERVICES, LLC | **Case No. 2:23-cv-02615**<br>FLSA Collective Action<br>Fed. R. Civ. P. 23 Class Action<br><br>Jury Trial Demanded |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Oyakimigbia Okokuro brings this lawsuit to recover unpaid overtime wages and other damages owed by Apex Human Services, LLC ("Apex").

2. Okokuro regularly worked for Apex in excess of 40 hours in a week.

3. But Apex Human Services, LLC ("Apex") failed to pay Okokuro and other hourly workers like her at the proper overtime rate for these hours.

4. Instead, Apex paid Okokuro and workers like her at their same hourly rate for all hours worked and improperly classified them as independent contractors.

5. Apex's failure to pay Okokuro and workers like her overtime wages violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

6. Apex's failure to pay overtime wages also violates the Pennsylvania Minimum Wage Act (PMWA), 43 Pa. Stat. Ann. § 333.101.

7. This class and collective action seeks to recover the unpaid wages and other damages owed to Okokuro and other hourly workers at Apex.

### JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. The Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Apex's principal place of business is in this District.

11. Okokuro worked for Apex in this District.

12. Therefore, venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**PARTIES**

13. **Plaintiff Oyakimigbia Okokuro** is a natural person.

14. At all relevant times, Okokuro worked for Apex.

15. Okokuro was, at all relevant times, an employee of Apex.

16. Apex paid Okokuro on an hourly basis.

17. Okokuro worked for Apex from March 2017 to December 2021.

18. While Okokuro worked for Apex, she worked exclusively for Apex.

19. Okokuro worked for Apex in Pennsylvania.

20. Okokuro represents at least two groups of similarly situated Apex workers.

21. Okokuro seeks to represent a collective of similarly situated employees under 29 U.S.C. § 216(b) (the "FLSA Collective"). The FLSA Collective is defined as:

> **All current and former persons employed by, or working on behalf of, Apex Human Services, LLC in the United States from three years prior to the date suit was filed, until the entry of judgment, who were paid "straight time for overtime."**

22. Okokuro represents a class of similarly situated workers under Pennsylvania law pursuant to Federal Rule of Civil Procedure 23. This "Pennsylvania Class" is defined as:

**All current and former persons employed by, or working on behalf of, Apex Human Services, LLC in Pennsylvania from three years prior to the date suit was filed, until the entry of judgment, who were paid "straight time for overtime."**

23. Throughout this Complaint, the FLSA Collective and Pennsylvania Class members are also referred to jointly as the "Similarly Situated Workers."

24. **Defendant Apex Human Services, LLC ("Apex")** is a domestic limited liability company.

25. Apex's headquarters and principal place of business is in this District.

26. At all relevant times, one or more of Apex's ultimate members were citizens of Pennsylvania.

27. Apex may be served by service upon its registered agent or upon any of its officers, directors, managing agents, or general agents at **332 Laurel Ave., Aldan, PA 19018**, or by any other method allowed by law.

## COVERAGE UNDER THE FLSA

28. At all relevant times, Apex was an employer of Okokuro within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

29. At all relevant times, Apex was an employer of the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

30. At all relevant times, Apex has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

31. During at least the last three years, Apex has had gross annual sales in excess of $500,000.

32. During at least the last three years, Apex was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

33. During at least the last three years, Apex has employed many workers, including Okokuro and the FLSA Collective members, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

34. Apex employs many workers, including Okokuro and the FLSA Collective members, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

35. The goods and materials handled, sold, or otherwise worked on by Okokuro, and other Apex employees and that have been moved in interstate commerce include, but are not limited to, medical equipment and supplies and pharmaceuticals.

36. Apex treated Okokuro as an employee and uniformly dictated the pay practices to which Okokuro was subjected.

37. Apex's misclassification of Okokuro as an independent contractor does not alter her status as an employee for purposes of this FLSA action.

**FACTS**

38. Apex is a home health care agency. Apex, Home, https://apexhs.org (last visited July 7, 2023).

39. Apex "provide[s] healthcare services across the lifespan to patients with complex and chronic medical needs." Apex, Services, https://apexhs.org/services/ (last visited July 7, 2023).

40. To provide these healthcare services, Apex needs healthcare workers.

41. The healthcare workers Apex needs to perform its healthcare services include nurses and health aides. Apex, Services, https://apexhs.org/services/ (last visited July 7, 2023).

42. Apex is "always hiring" healthcare workers. Apex, Employment, https://apexhs.org/employment/ (last visited July 7, 2023).

43. Apex "maintains a pool" of such workers. Apex, Home, https://apexhs.org (last visited July 7, 2023).

44. Apex's "nurses and … caregivers … help … meet [its clients'] home healthcare needs." Apex, Home, https://apexhs.org (last visited July 7, 2023).

45. Some of Apex's healthcare workers are employed by Apex.

46. Apex's employed healthcare workers perform the same work as its independent contractor healthcare workers in the same positions.

47. Many of the individuals who worked for Apex performing the same or substantially similar job duties as Okokuro were classified as employees.

48. Many of the individuals who worked for Apex performing the same or substantially similar job duties as Okokuro were misclassified by Apex as so-called independent contractors.

49. Apex needs healthcare workers to perform healthcare services work.

50. For example, without pediatric nurses, Apex could not provide pediatric nursing services.

51. Without home health aides, Apex could not provide home health aide services.

52. While exact job titles and job duties may slightly differ, Okokuro and the Similarly Situated Workers were subjected to the same or similar illegal pay practices for similar work.

53. Regardless of whether they were classified as employees or independent contractors, Apex paid Okokuro and the Similarly Situated Workers the same hourly rate for all hours worked, including those over 40 in a workweek.

54. For example, Okokuro worked exclusively for Apex from September 2017 to December 2021.

55. Throughout her employment with Apex, Okokuro was classified as an independent contractor.

56. The work Okokuro performed is an essential part of Apex's core business.

57. During Okokuro's employment with Apex and while she was classified as an independent contractor, Apex exercised control over all aspects of her job.

58. Okokuro was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in her same job position) to perform her job duties.

59. During the time that Okokuro worked with Apex, she worked exclusively for Apex.

60. Apex controlled all the significant or meaningful aspects of the job duties performed by Okokuro.

61. Apex ordered the hours and locations Okokuro worked, tools used, and rate of pay received.

62. Even though Okokuro often worked away from Apex's offices without the presence of a direct Apex supervisor, Apex still controlled all aspects of Okokuro's job activities by enforcing mandatory compliance with Apex's policies and procedures.

63. No real investment was required of Okokuro to perform her job.

64. Apex determined Okokuro's opportunity for profit and loss.

65. Okokuro did not provide the equipment she worked with on a daily basis. Apex made the large capital investments in buildings, machines, equipment, tools, and supplies in the business in which Okokuro works.

66. Okokuro did not incur operating expenses like rent, payroll, marketing, and insurance.

67. Okokuro was economically dependent on Apex during her employment.

68. Apex set Okokuro's rate of pay and her work schedule.

69. Apex directly determined Okokuro's opportunity for profit and loss, as Okokuro's earning opportunity was based on the amount of time Apex scheduled her to work.

70. For the purposes of an unpaid overtime claim, very little skill, training, or initiative was required of Okokuro to perform her job duties.

71. Indeed, the daily and weekly activities of Okokuro and the Similarly Situated Workers were routine and largely governed by standardized plans, procedures, and checklists created by Apex.

72. Virtually every job function of the Similarly Situated Workers was pre-determined by Apex and/or its clients, including the equipment to use at a job site, the schedule of work, and related work duties.

73. Okokuro and the Similarly Situated Workers were prohibited from varying their job duties outside pre-determined parameters.

74. Moreover, the job functions of Okokuro and the Similarly Situated Workers were primarily manual labor/technical in nature that did not require a college education or other advanced degree.

75. For the purposes of an unpaid overtime claim, Okokuro and the Similarly Situated Workers performed substantially similar job duties related to healthcare services.

76. Okokuro performed routine manual and technical labor duties that were largely dictated by Apex and/or its clients.

77. Okokuro was not employed by Apex on a project-by-project basis.

78. Okokuro was not paid by Apex on a project-by-project basis.

79. All the Similarly Situated Workers performed the same or similar job duties and were subjected to the same or similar policies and procedures by which Apex dictated the day-to-day activities performed by each person. The Similarly Situated Workers also worked similar hours as Okokuro and were denied overtime pay as a result of the same illegal pay practice.

80. Okokuro was an hourly employee of Apex.

81. Apex never paid Okokuro a salary.

82. Apex never paid Okokuro on a fee basis.

83. Apex paid Okokuro by the hour.

84. Okokuro reported the hours she worked to Apex on a regular basis.

85. Okokuro' hours are reflected in Apex's records.

86. Apex paid Okokuro at the same hourly rate for all hours worked in a workweek.

87. Apex did not pay Okokuro an overtime premium for all hours worked in excess of 40 in a workweek.

88. Instead, Apex paid Okokuro "straight time"—that is, her regular hourly rate—for all overtime hours she worked.

89. Okokuro normally worked more than 40 hours in a week.

90. Rather than receiving time-and-a-half as required by the FLSA for all hours over 40 in a workweek, Okokuro only received "straight-time" pay for her overtime hours worked.

91. This "straight-time-for-overtime" payment scheme violates the FLSA.

92. Apex was aware of the overtime requirements of the FLSA.

93. Apex nonetheless failed to pay certain hourly employees, such as Okokuro, overtime for all hours worked over 40 in a workweek.

94. Apex's failure to pay overtime to these hourly workers was, and is, a willful violation of the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

95. Apex's illegal "straight time for overtime" policy extends well beyond Okokuro.

96. It is the "straight time for overtime" payment plan that is the "common policy that affect[s] [the] putative collectiv" in this FLSA collective action. *McConnell v. EN Eng'g,*

*LLC*, No. 2:20-CV-00153-MJH, 2020 WL 6747991, at *4 (W.D. Pa. Oct. 8, 2020); *see also*, *e.g.*, *Vasquez v. CDI Corp.*, No. CV 20-1044, 2020 WL 7227271, at *4 (E.D. Pa. Dec. 7, 2020) ("[T]he same straight-time compensation practice … pleads an unlawful nationwide policy and a factual nexus with other employees"); *Bursell v. Tommy's Seafood Steakhouse*, No. CIV.A. H-06-0386, 2006 WL 3227334, at *3 (S.D. Tex. Nov. 3, 2006) (certifying "straight time for overtime" claim for collective treatment); *Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2014 WL 5810529, at *5 (E.D. La. Nov. 7, 2014) (same).

97. Apex has paid many hourly workers according to the same unlawful scheme.

98. Any differences in job duties do not detract from the fact that these hourly workers were entitled to overtime pay.

99. The workers impacted by Apex's "straight time for overtime" scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### CLASS ACTION ALLEGATIONS—PENNSYLVANIA LAW

100. The illegal practices Apex imposed on Okokuro were likewise imposed on the Pennsylvania Class members.

101. Numerous other individuals who worked for Apex were not properly compensated for all hours worked, as required by Pennsylvania law.

102. The Pennsylvania Class is so numerous that joinder of all members of the class is impracticable.

103. Apex imposed uniform practices and policies on Okokuro and the Pennsylvania Class members regardless of any individualized factors.

104. Based on his experience and tenure with Apex, as well as coverage of the Kronos hack, Okokuro is aware that Apex's illegal practices were imposed on the Pennsylvania Class members.

105. Pennsylvania Class members were all not paid on time, if at all, for all of their wages, including overtime when they worked in excess of 40 hours per week.

106. Apex's failure to pay wages and overtime compensation in accordance with Pennsylvania law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Pennsylvania Class Members.

107. Apex's failure to pay overtime compensation results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Pennsylvania Class Members.

108. Okokuro's experiences are therefore typical of the experiences of the Pennsylvania Class members.

109. Okokuro has no interest contrary to, or in conflict with, the members of the Pennsylvania Class. Like each member of the proposed class, Okokuro has an interest in obtaining the unpaid wages and other damages owed under the law.

110. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

111. Absent this action, many Pennsylvania Class members likely will not obtain redress of their injuries and Apex will reap the unjust benefits of violating Pennsylvania law.

112. Furthermore, even if some of the Pennsylvania Class members could afford individual litigation against Apex, it would be unduly burdensome to the judicial system.

113. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

114. The questions of law and fact common to each of the Pennsylvania Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    (a) Whether the Pennsylvania Class members were not paid overtime at 1.5 times their regular rate of pay for all hours worked in excess of 40 in a workweek; and

    (b) Whether Apex's failure to pay overtime at the rates required by law violated the PMWA.

115. Okokuro's claims are typical of the Pennsylvania Class members. Okokuro and the Pennsylvania Class members have all sustained damages arising out of Apex's illegal and uniform employment policies.

116. Okokuro knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

117. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### FIRST CAUSE OF ACTION–VIOLATIONS OF THE FLSA AS TO OKOKURO AND THE FLSA COLLECTIVE

118. Okokuro incorporates all allegations in paragraphs 1 to 117.

119. By failing to pay Okokuro and the FLSA Collective members overtime at 1.5 times their regular rates, Apex violated the FLSA. 29 U.S.C. § 207(a).

120. Apex owes Okokuro and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

121. Apex owes Okokuro and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

122. Apex knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay overtime compensation to Okokuro and the FLSA Collective members.

123. Because Apex knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Apex owes these wages for at least the past three years.

124. Apex's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

125. Because Apex's decision not to pay overtime was not made in good faith, Apex also owes Okokuro and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

126. Okokuro and the FLSA Collective members are entitled to their unpaid wages under the FLSA, including overtime wages in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE PMWA
### AS TO OKOKURO AND THE PENNSYLVANIA CLASS

127. Okokuro incorporates all allegations in paragraphs 1 to 117.

128. The conduct alleged in this Complaint violates the PMWA.

129. Apex was and is an "employer" within the meaning of the PMWA.

130. At all relevant times, Apex employed Okokuro and the other Pennsylvania Class members as "employees" within the meaning of the PMWA.

131. The PMWA requires an employer like Apex to pay overtime to all non-exempt employees.

132. Okokuro and the other Pennsylvania Class Members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked.

133. Within the applicable limitations period, Apex had a policy and practice of failing to pay proper overtime to the Pennsylvania Class Members for their hours worked in excess of 40 hours per week.

134. As a result of Apex's failure to pay proper overtime to Okokuro and the Pennsylvania Class Members for work performed in excess of 40 hours in a workweek, Apex violated the PMWA.

135. Okokuro and the Pennsylvania Class Members are entitled to overtime wages under the PMWA in an amount equal to 1.5 times their rates of pay, liquidated damages, attorney's fees, costs, penalties, and all other legal and equitable relief provided under the PMWA.

**RELIEF SOUGHT**

Okokuro prays for judgment against Apex as follows:

    a.    For an order certifying a collective action for the FLSA claims;

    b.    For an order certifying a class action for the Pennsylvania law claims;

    c.    For an order finding Apex liable for violations of federal wage laws with respect to Okokuro and all FLSA Collective members covered by this case;

    d.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Okokuro and all FLSA Collective members covered by this case;

    e.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under Pennsylvania wage laws to Okokuro and all Pennsylvania Class members covered by this case;

f.  For a judgment awarding attorneys' fees to Okokuro, all FLSA Collective members, and all Pennsylvania Class members covered by this case;

g.  For a judgment awarding costs of this action to Okokuro, all FLSA Collective members, and all Pennsylvania Class members covered by this case;

h.  For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Okokuro, all FLSA Collective members, and all Pennsylvania Class members covered by this case; and

b.  For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew S. Parmet*
By: _____
**Matthew S. Parmet**
PA Bar # 331609
**PARMET PC**
2 Greenway, Ste. 250
Houston, TX 77046
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**

# JURY DEMAND

Plaintiff demands a trial by jury on all issues.

*/s/ Matthew S. Parmet*
_____
**Matthew S. Parmet**